*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LOGAN WILLIAM REURINK,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2024

No. 362639
Allegan Circuit Court
LC No. 2020-023983-FH

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Logan Reurink downloaded child sexually abusive material (CSAM) from a peer-to-peer file-sharing software program online. CSAM was found on his laptop, external hard drives, and a hard disk. A jury convicted Reurink of three counts of aggravated child sexually abusive activity, MCL 750.145c(2)(b); three counts of using a computer to commit aggravated child sexually abusive activity, MCL 752.797(3)(f); three counts of aggravated child sexually abusive activity–distributing or promoting, MCL 750.145c(3)(b); and three counts of using a computer to commit aggravated child sexually abusive activity–distributing or promoting, MCL 752.797(3)(e). Reurink appeals as of right and argues that the trial court improperly instructed the jury and his trial counsel was ineffective. We disagree and affirm.

## I. BACKGROUND

This case commenced after an investigation revealed that Reurink downloaded and electronically stored CSAM.[1] Investigators seized Reurink's devices and found 32 CSAM videos saved to his laptop, about 287 "items of CSAM" saved among his various external hard drives, and about 20 CSAM photos and 20 CSAM videos saved to a "hard disk."[2] According to the investigating officer, taken together, Reurink's devices included roughly 30 to 50 videos

---

[1] We use the term "stored" to describe the storage of information, like the videos and pictures at issue here, in digital form, utilizing computer or computer-related hardware and/or software.

[2] According to the record, hard disk refers to a type of digital storage device similar to a hard drive.

containing CSAM that had not been deleted, with at least three videos that were not duplicates. The officer confirmed that the 32 videos on Reurink's computer were downloaded from "eMule," a peer-to-peer file sharing program that allows users to share files over the internet and involves "copying from one storage device onto a computer storage device[.]" He also testified that the files on the hard drives and the hard disk would likewise have had to been downloaded or transferred (after an initial download) onto those respective items at some earlier time.

In January 2021, the prosecutor made an offer for Reurink to plead guilty to two counts of aggravated child sexually abusive activity under MCL 750.145c(2), a 20-year felony. Reurink rejected this offer and counteroffered to plead guilty to one count of child sexually abusive activity under MCL 750.145c(4) (possession of CSAM), a 4-year felony. The prosecutor rejected the counteroffer. At trial, over defense counsel's objection, the trial court instructed the jury as follows regarding the charges under MCL 750.145c(2):

> To make is to bring into existence by copying and specifically includes but is not limited to intentionally creating a copy of a child sexually abusive material, in whole or in part, but does not include creation of a copy within the same digital storage device or media. *To make or copy for the purpose of the child sexually abusive activity charge includes the downloading of child sexually abusive material even if this downloading is done for personal use*. [Emphasis added.]

The jury convicted Reurink as charged, and the trial court sentenced him in August 2022. Reurink appealed, and later moved in this Court to remand for an evidentiary hearing, arguing that his trial counsel was ineffective for (1) providing erroneous advice and (2) improperly or untimely objecting to the trial court's jury instructions. We denied Reurink's motion to remand and instructed his counsel to file a supplemental brief addressing whether the trial court erred "in instructing the jury that downloading alone was sufficient to convict defendant of Counts 1, 2, and 3[.]" *People v Reurink*, unpublished order of the Court of Appeals, entered November 8, 2023 (Docket No. 362639).

## II. STANDARDS OF REVIEW

We review claims of instructional error de novo. *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021). However, we review the trial court's "determination whether a jury instruction is applicable to the facts of the case for an abuse of discretion." *Id.* (quotation marks and citation omitted).[3] "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id.* Further, "[t]his Court reviews jury instructions in their entirety to determine whether the trial court committed error requiring reversal." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). Even if imperfect, reversal is not

---

[3] Although the prosecution argues that Reurink's instructional issue is unpreserved, his trial counsel properly preserved the issue by objecting to the "downloading" language in the prosecution's proposed jury instructions before the jury deliberated at trial. See *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003) ("To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates.").

warranted if the "instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012).

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A trial court's finding is clearly erroneous when we are left with a definite and firm conviction that a mistake was made. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). When, as here, "the trial court has not conducted an evidentiary hearing, this Court's review is limited to mistakes apparent on the record." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021) (quotation marks and citation omitted).

## III. ANALYSIS

Reurink argues that the trial court erred by instructing the jury that downloading alone sufficed to convict him on the three counts of aggravated child sexually abusive activity pursuant to MCL 750.145c(2)(b). According to Reurink, this was improper because he "was accused of downloading images and saving them all from one device, his computer," and "[t]here was no evidence that images were even transferred from one device to another."

Reurink also argues that his trial counsel was ineffective for (1) erroneously advising that Reurink had a defense to the charges against him, which resulted in Reurink's rejection of the plea offer; and (2) not properly or timely objecting to jury instructions. We disagree, and address each issue below.

## A. JURY INSTRUCTION

This issue involves the conduct required for conviction under MCL 750.145c(2), which states, in pertinent part, as follows:

> A person who . . . arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material for personal, distributional, or other purposes if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a crime . . . .

The crux of this issue relies on the definitions of "make," "copy," and "reproduce" under MCL 750.145c(2). In *People v Hill*, 486 Mich 658; 786 NW2d 601 (2010), the Michigan Supreme Court analyzed a similar issue under a prior version of the statute. Two years later, the Legislature adopted 2012 PA 583, which, among other changes to MCL 750.145c(2), explicitly defined "make" as used in section 145c. See MCL 750.145c(1)(j). Only one case—*People v Seadorf*, 322

Mich App 105; 910 NW2d 703 (2017)—has addressed the elements of MCL 750.145c(2) since the statute was amended.

In *Hill*, 486 Mich at 661, the Michigan Supreme Court specifically analyzed the elements of "arranges for, produces, makes, or finances" under the prior version of MCL 750.145c(2), as amended by 2004 PA 478, which lacked the current "copy" and "reproduce" language. The Court addressed "whether a defendant who downloads [CSAM] from the Internet and 'burns' that material to a CD-R may be convicted of violating MCL 750.145c(2)," or if such defendants should instead be guilty of possessing CSAM under MCL 750.145c(4). *Id.* The Court reasoned that downloading preexisting pornographic images for personal use was categorically different than creating pornographic images:

> [T]he Legislature did not intend the imposition of the same maximum punishment on a person who downloads a prohibited image from the Internet and burns it to a CD-R for personal use as on the person who is responsible in the first instance for the creation and existence of the pornographic images of minors. The person who is responsible for bringing the prohibited images into existence is obviously more morally, and under the statute, more criminally, culpable than the person who downloads an image and saves it to another medium for personal use.

> We hold that when the terms "produces" and "makes" in MCL 750.145c(2) are construed in accordance with their immediately surrounding text and with a view toward the statute's overall organization, including a graduated scheme of offenses and punishments, a defendant may not be convicted of the 20-year felony when there is not proof beyond a reasonable doubt that he had a criminal intent to do something other than possess the CD-Rs for his own personal use. Just as a person who downloads a song from the Internet and burns it to a CD-R is not considered to have produced or made a song, so a person who burns a prohibited image to a CD-R for his personal use has not produced or made the image. [*Id.* at 661-662.]

Accordingly, the Court concluded that a defendant who downloads CSAM and burns the images onto a compact disc, without any evidence that the defendant had a criminal intent to do anything beyond possession, may not be convicted of violating MCL 750.145c(2); instead, the defendant should be found guilty of possession of CSAM under MCL 750.145c(4). *Id.* at 683.

Following *Hill*, the Legislature adopted 2012 PA 583, which amended the language of MCL 750.145c to include a definition of "make." MCL 750.145c(1)(j) now defines "make" as follows:

> [T]o bring into existence by copying, shaping, changing, or combining material, and specifically includes, but is not limited to, intentionally creating a reproduction, copy, or print of child sexually abusive material, in whole or part. Make *does not include the creation of an identical reproduction or copy* of child sexually abusive material *within the same digital storage device or the same piece of digital storage media*. [Emphasis added.]

The Legislature also amended MCL 750.145c(2) to add culpability for—in addition to the preexisting categories of arranging for, producing, making, and financing—an individual who "copies" or "reproduces" CSAM. And the Legislature clarified that subsection c(2) applies to such conduct whether the CSAM is "for personal, distributional, or other purposes . . . ."

Following these amendments, this Court decided *Seadorf*. In *Seadorf*, 322 Mich App at 107, the defendant, Seadorf, "used a computer to download child pornography for personal possession and use at home." "[Seadorf] admitted to downloading the child sexually abusive material. Upon searching [Seadorf's] phone, police officers located several photo albums containing child sexually abusive material. A further investigation into [Seadorf's] home computer revealed several images and videos of child sexually abusive material saved on [Seadorf's] computer hard drive." *Id*. at 108.

In exchange for the dismissal of two counts of using a computer to commit a crime, Seadorf pleaded guilty to one count of aggravated child sexually abusive activity under MCL 750.145c(2) and one count of possession of CSAM under MCL 750.145c(4). *Id*. at 107-108. Seadorf subsequently moved to withdraw his guilty plea "because he only downloaded the [CSAM]" for personal use and therefore could not be found guilty under MCL 750.145c(2). *Id*. at 108, 110.

This Court affirmed the trial court's denial of Seadorf's motion to withdraw his guilty plea, reasoning that downloading was sufficient evidence of guilt under MCL 750.145c(2), and there was "a sufficient factual basis to show that [Seadorf] downloaded [CSAM]." *Id*. at 111-112. This Court explained that MCL 750.145c(1)(j) now included a definition of "make," and that

> [Seadorf's] argument that the term "makes," as used in MCL 750.145c(2) (the child sexually abusive activity statute), does not include downloading an image is incorrect. While simply viewing an image on the Internet does not amount to "making" content . . . [b]ecause [Seadorf] *saved new images and videos into folders, he created new copies of the content; thus, [Seadorf] "made" content.* [*Id*. at 111 (emphasis added).]

Accordingly, this Court concluded that "[p]er MCL 750.145c(2), 'copying' [CSAM] falls into the 20-year felony offense." *Id*. at 111-112.

Citing *Seadorf* and over defense counsel's objection, the trial court instructed the jury as follows:

> To make is to bring into existence by copying and specifically includes but is not limited to intentionally creating a copy of a child sexually abusive material, in whole or in part, but does not include creation of a copy within the same digital storage device or media. *To make or copy for the purpose of the child sexually abusive activity charge includes the downloading of child sexually abusive material even if this downloading is done for personal use*. [Emphasis added.]

Based on *Seadorf*, and because "[t]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner,"

*Montague*, 338 Mich App at 37, the trial court's decision to include the prosecutor's requested jury instruction on downloading was not an abuse of discretion.

The jury instruction at issue explained that "making" "does not include creation of a copy within the same digital storage device or media" but "includes the downloading of child sexually abusive material even if . . . done for personal use."  "[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence."  *Id*. at 37-38 (quotation marks and citation omitted).  Read as a whole, the given instruction explains that downloading CSAM—including onto a computer's hard drive and even if done for personal use—constitutes "making."  While different than M Crim JI 20.38a, the provided instruction, and specifically the addition of information on "downloading," is directly in line with this Court's reasoning in *Seadorf*.[4]

> In *Seadorf*, this Court concluded:
>
> While simply viewing an image on the Internet does not amount to "making" content because the individual has not actually copied the image yet, copying an image that is either stored on a computer hard drive or burned to a CD-ROM or other digital media storage device is considered "making" content. . . . . Although the term download has multiple meanings, [i]t is often used to refer to actively saving a copy of a file to a computer's hard drive.  [*Seadorf*, 322 Mich App at 111 (quotation marks and citation omitted; alteration in original).]

Accordingly, this Court determined that Seadorf "made" content under MCL 750.145c(2) when he downloaded the content and "saved new images and videos into folders."  *Id*.  We also agree with the Court's additional observation that downloading refers "to actively saving a copy of a file to a computer's hard drive."  Similarly, an individual may download content by saving files to a cell phone as Seadorf did—likely an increasingly prevalent scenario given the ubiquity and advanced capabilities of such devices.

Downloading content from the internet onto a computer or cell phone necessarily "bring[s] it] into existence by copying" on a different digital storage device as contemplated by MCL 750.145c(1)(j).  Specifically, a downloaded file is copied from the internet and brought into existence in whatever location it is saved on a given device, where it did not exist previously.  To the extent that this subdivision excludes "the creation of an identical reproduction or copy of child sexually abusive material within the same digital storage device or the same piece of digital storage media," a computer or other device on which content may be downloaded is not the same as where such content originated from over the internet.  For example, Reurink here downloaded content over the internet from a file-sharing program, content that originated from its own distinct digital storage device or piece of digital storage media, onto at least one other device with its own digital

---

[4] Notably, the Model instruction was drafted the year before this Court's published opinion in *Seadorf*.

-6-

storage.[5]  Only any identical copies of materials then made within a single storage device—but importantly not file transfers to other storage devices like external hard drives or a hard disk—would be exempt from prosecution under MCL 750.145c(2).

To the extent that *Hill* concluded MCL 750.145c(2) is inapplicable when someone only downloads CSAM for personal use, this was overruled by the Legislature's 2013 amendments to the statute.  See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009) ("[C]ourts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute.")  Indeed, MCL 750.145c(2) now plainly applies to copying and reproducing, as well as making, CSAM, including when such materials are copied, reproduced, or made for personal use.  The added language, while not explicitly mentioning downloads, cuts squarely against *Hill*'s holding.

Our interpretation of the statute to punish downloading CSAM also is not contrary to the graduated scheme of offenses and punishments of MCL 750.145c, as *Hill* reasoned before the statute was amended.  For example, a person may still be guilty of possession of CSAM under MCL 750.145c(4) ("A person who knowingly possesses or knowingly seeks and accesses any [CSAM] . . .") by simply viewing such materials online.  But when an individual takes the additional step of downloading CSAM onto their own digital storage device like a computer or cell phone, even if intended for personal use, he or she becomes more morally and criminally culpable by creating a new copy of harmful, illegal material that *could* then be easily distributed or reproduced further without detection.

Therefore, because Reurink downloaded CSAM via the internet onto his own device or devices in conformance with the Legislature's meaning of "make" in MCL 750.145c(2), the challenged instruction was proper.  Specifically, the instruction and the "downloading" language therein, given the theories supported by the evidence, fairly and fully presented the applicable law to the jury in an understandable manner.

Further, even assuming that downloading alone is insufficient for a conviction under MCL 750.145c(2) and the trial court erred by including the "downloading" language in its instruction, the error was harmless.  "Under the harmless-error doctrine, this Court will only reverse if after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative."  *Montague*, 338 Mich App at 40-41 (quotation marks and citation omitted).  Regarding the plain language of the statute, MCL 750.145c(2) relates to a person who "makes" or "copies" CSAM "for personal, distributional, or other purposes."  Further, MCL 750.145c(1)(j) explains that "make" "does not include the creation of an identical reproduction or

---

[5] We note that the record only explicitly provides that Reurink downloaded CSAM materials from the internet to his laptop, while it is unclear how or when the materials discovered on his hard drives and the hard disk were downloaded and/or transferred to those respective items.  Nevertheless, there is evidence that the files on the hard drives and the hard disk, which indisputably belonged to Reurink, had to have been downloaded or transferred (after an initial download) onto those respective items at some point.

copy of child sexually abusive material *within the same digital storage device or the same piece of digital storage media*." (Emphasis added.) The evidence here shows that Reurink not only downloaded CSAM onto his computer, but also copied materials onto external hard drives and an external hard disk. Therefore, a reasonable person could have determined that Reurink's actions constituted "making" child sexually abusive material pursuant to MCL 750.145c(2). See MCL 750.145c(1)(j).

Reurink also argues that the challenged jury instruction denied him his constitutional due-process right to present a defense. Because this particular argument is unpreserved, we review it for plain error affecting Reurink's substantial rights. *People v Bailey*, 330 Mich App 41, 59; 944 NW2d 370 (2019). As previously stated, there was no instructional error; however, even if there were error, reversal is unwarranted. Specifically, by saving CSAM onto external hard drives and a hard disk, Reurink "made" files pursuant to MCL 750.145c(2). Therefore, this is not a case in which an innocent person was convicted, so any error did not affect Reurink's substantial rights. See *People v Shafier*, 483 Mich 205, 219-220; 768 NW2d 305 (2009).

## B. INEFFECTIVE ASSISTANCE

As stated, Reurink also argues that his trial counsel was ineffective for (1) erroneously advising that Reurink had a defense to the charges against him, which resulted in Reurink's rejection of the plea offer; and (2) not properly or timely objecting to jury instructions.

"Under *Strickland v Washington*,[6] establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

> Claims of ineffective assistance of counsel center on deficiencies in the defense counsel's decision-making . . . . There is a strong presumption that trial counsel's decision-making is the result of sound trial strategy. . . . If counsel's strategy is reasonable, then his or her performance was not deficient. Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel. In addition, failing to raise an objection may be consistent with a sound trial strategy. [*People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021) (quotation marks and citation omitted; first omission in original).]

Reurink first argues that his trial counsel's erroneous advice caused him to reject the prosecution's offer of pleading guilty to two counts of aggravated child sexually abusive activity pursuant to MCL 750.145c(2). Notably, this was Reurink's primary argument on appeal before we directed for supplemental briefing regarding the above instructional issue. And Reurink

---

[6] See *Strickland v Washington*, 466 US 668; 104 S Ct 2050; 80 L Ed 2d 674 (1984).

-8-

initially argued for this Court to reverse his convictions and allow him to now accept the prosecution's initial plea offer under *Lafler v Cooper*, 566 US 156, 163-164; 132 S Ct 1376; 182 L Ed 2d 398 (2012) (when "ineffective advice led . . . to a [plea] offer's . . . rejection, . . . a defendant must show [1] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.").

Reurink claims that he rejected the plea offer because of counsel's advice that the prosecution had to prove all the different conduct listed in MCL 750.145c(2)(b)—i.e., that he arranged for *and* produced *and* made, etc., CSAM—to secure a guilty verdict under the statute. Reurink claims he rejected the plea offer because counsel advised him of this defense that, by operation of the statute, clearly did not apply where proof of only one form of conduct suffices to convict.

"As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). In this context, a defendant must still meet the *Strickland* two-prong test. *Id*. at 592. Reurink's claim, however, is unsupported by the available record.

Reurink's trial counsel never argued that arranging for, producing, or financing were elements that the prosecution needed to prove. Instead, counsel argued the following in his opening statement:

> So, the prosecutor and I agree on one thing and that is that the defendant was found to be in possession of [CSAM]. I alluded to that in my questions to you during jury selection, and I'm going to remind you of that from time to time throughout the course of this trial.
>
> This is not a trial about whether or not this is [CSAM]. This trial is about whether or not the prosecutor can prove beyond a reasonable doubt that [Reurink] was either distributing or promoting or copying or making or conspiring with another individual, which essentially means agreeing with another individual to do all of these things. And essentially, what it comes down to, ladies and gentlemen, is that the prosecutor has over-charged this case. They cannot prove each and every element beyond a reasonable doubt because they have no evidence that my client was making or copying these images.
>
> Was he getting these images off the internet? Yes. Was he copying them? No. Was he saving them? Yes. Was he copying them? No. That's what this comes down to.

* * *

[T]his comes down to whether or not each and every one of you unanimously, all 12 of you at the end of this trial, agree that the prosecutor has proven beyond a reasonable doubt that [Reurink] copied this stuff or made it. And the fact is, is there's no evidence that he was involved with any of these children; that he was directing it or producing it, or acting in it. He was buying a ticket to the movie, ladies and gentlemen, and that doesn't make him a producer; that doesn't make him a writer; it doesn't make him a director; it doesn't make him an actor. It makes him a movie watcher.

Similarly, in his closing arguments, counsel argued as follows:

We acknowledge that this is [CSAM], you know, we've never denied that . . . . We are, however, arguing that my client was not involved with conspiring or arranging for with other people or producing or making or copying or reproducing or financing it; those are the terms we started out with when the Court read the charges to you. The terms have been since condensed, and now the terms will be very, very limited as to the definitions of these particular offenses.

\* \* \*

They have to prove that [Reurink] intentionally created a copy of [CSAM] in whole or in part but does not include the creation of a copy within the same digital storage device or media. I'll repeat that. And this is from the instructions that the Court will give you, making or copying; to make is to bring into existence by copying and specifically includes but is not limited to intentionally creating a copy of [CSAM] in whole or in part but does not include creation of a copy within the same digital storage device or media.

\* \* \*

[Reurink], despite his flaws and despite the fact that he is a sick individual, is still a human being; he's still entitled to all of the constitutional protections that every one of us in this room enjoys.

So, ladies and gentlemen, without further adieu [sic], as I said, I am going to ask that you find [Reurink] not guilty on all of these distribution or production charges, and at worst, I'm going to ask that you find him guilty of simple possession of [CSAM].

While referring to one's client as "a sick individual" is of questionable strategic value, this record ultimately belies the argument that Reurink's trial counsel thought a jury could not find Reurink guilty unless the prosecution proved *all* the different conduct listed in MCL 750.145c(2)(b). His trial counsel's strategy focused only on whether Reurink made or copied CSAM under the statute. Accordingly, counsel's performance was not deficient, and Reurink's request to now accept the prosecution's initial plea offer is meritless. See *Lafler*, 566 US at 170-172.

Reurink also argues that his trial counsel should have objected to the proposed jury instruction before trial began so Reurink could decide how to proceed with his case, particularly given that the added "downloading" language seemingly left him with no defense. However, as already stated, the proposed jury instruction was proper, and so any earlier objection would have been meritless. In any event, counsel did timely object to the instruction at trial before the jury deliberated, and we are unpersuaded that any delay in doing so was inconsistent with sound trial strategy. For the foregoing reasons, Reurink cannot establish that his trial counsel was ineffective.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young